[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] PARTIAL SEPARATION AGREEMENT
This Agreement, made and entered intd this the 18th day of JANUARY, 2001, by and between FRANCIE LEADER, hereinafter referred to as the Wife or Mother, and RICHARD DAMPF, hereinafter referred to as the Husband or Father, the foregoing parties are, at times, also referred to as parent (s) in this agreement.
 WITNESSETH
WHEREAS, the parties were married on AUGUST 28, 1994. at Detroit, Michigan; and
WHEREAS, there is ONE (1) minor child issue of the parties' marriage, i.e.:
Joshua Leader Dampf, born April 1, 1999
WHEREAS, each of the parties represent one to the other that they know of no other proceedings in this State or in any other State or jurisdiction involving custody or visitation of the minor child; and
WHEREAS, the marriage between the parties has irretrievably broken down and the parties are desirous of living separate and apart; and
WHEREAS, the parties, pursuant to § 46b-51 Conn. Gen. Stat., stipulate and agree that the marriage has irretrievably broken down;
WHEREAS, the Wife instituted an action for dissolution of marriage and other relief which action was assigned Docket Number F.A. 00-0178031 S and is currently pending in the Superior Court for the Judicial District of Stamford/Norwalk at Stamford in the State of Connecticut, U.S.A.; and
WHEREAS, the Husband appeared in the above-referenced action for dissolution of marriage; and,
WHEREAS, the Husband and Wife have been and are represented by indendent counsel of their choice and selection in the above-referenced CT Page 1830-dp action for dissolution of marriage, and each party has been fully informed of their legal rights and liabilities; and
WHEREAS, the Husband has appeared by John V.A. Murray, his attorney in the above-referenced action for dissolution of marriage and said party has been fully informed of his legal rights and liabilities; and
WHEREAS, the Wife and Husband are desirous of entering into these articles of Separation and Settlement, for the purpose of resolving and partially settling rights which they might have by reason of the dissolution of their marriage, and making suitable provisions as to child custody, child support. visitation, but not as to alimony and property division; and
WHEREAS, each party hereto believes that their Separation and settlement Agreement is fair, just and reasonable, and have freely, knowingly, and voluntarily consented to all its terms and provisions;
NOW THEREFORE, in consideration of the foregoing premises, and the mutual promises and undertakings herein contained, and for other good and valuable consideration made over by each party to the other, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:
 ARTICLE I SEPARATE WAYS
1.1 It shall be lawful that the parties live separate and apart from each other and continue to do so during the terms of their natural lives, and that each may at all times live separate and apart from the other, as if single and unmarried, and may reside from time to time at such place or places, and may conduct, carry on and engage in any employment, business or trade that either shall deem fit, without any control, restraint or interference directly or indirectly, by the other party hereto, and without any claim of said other party to any right, title or interest in any such property or business, except as such rights, liabilities or obligations are set forth in this agreement.
1.2 Neither party shall harass the other, or compel or endeavor to compel the other to cohabit or dwell with her or him, by any legal or other proceedings for the restitution of conjugal rights.
1.3 Neither party shall molest, harass, stalk or intentionally seek to CT Page 1830-dq cohabit, engage in conjugal relations or dwell with him or her.
 ARTICLE II ALIMONY
2.1 LEFT INTENTIONALLY BLANK
 ARTICLE III CHILD CUSTODY AND SUPPORT
3.1 The parties agree and stipulate that they believe it is in the best interests of the minor child, heretofore set forth, that there be joint legal custody of said child, as per § 46b-56a of the Connecticut General Statutes; and, that the primary residence and physical custody of the minor child be with the Plaintiff Mother.
3.2 It is the intent of the parties to facilitate and encourage visitation between the child and each of their parents, and the parties recognize and agree that they both are obligated to care for the minor child. Furthermore, the parties believe that they can consult with each other in order to make the necessary decisions regarding the child's best interests.
3.3 Notwithstanding the foregoing, on the birthday of either parent or on the children's birthdays, the non-custodial parent shall have the right of access to, and visitation with, the minor child on a schedule to be agreed to between the parties with due recognition of permitting the non-custodial parent to have meaningful contact and celebration with the minor child.
3.4 Access. During any period that the child is with either parent, the other parent shall have reasonable access to the child, including access by mail and telephone, during reasonable hours of the day or evening. Both the Husband and Wife shall provide their respective telephone numbers or other means of communications access to the other party, and each party agrees that they shall not disseminate the information to those who have no legitimate need to know, nor shall they abuse or permit any such information (i.e., telephone numbers — if unlisted or confidential means of communications access, e.g., fax, internet address, etc.) to be abused by others.
3.5 Visitation — Schedule. The husband shall have extensive visitation with the minor child not less than alternating weekends from 4:00 P.M. CT Page 1830-dr Friday until the following Sunday at 4:00 P.M. and during alternating weekdays from 12:00 P.M. to 5:00 P.M. The Husband shall have visitation with the minor child on alternating legal holidays and Jewish holidays. During the week preceding the Husband's visitation weekend, the Husband shall have visitation on Tuesdays and Thursdays; and, during the week following his weekend visitation, the Husband shall have visitation Mondays, Wednesdays and Fridays. In the event that the Wife shall, for any reason, be unable to be with the minor child on a weekday when the minor child is scheduled to be with her during the period, 12:00 PM to 5:00 PM, she shall immediately give notice to the Husband who, at his option, shall have access to the minor child during such period, provided that he give immediate notice to the Wife that he is exercising his option to be with the minor child during that time period when the Wife is unable to be with the minor child.
3.6 All transportation and expense as necessary to the husband exercising his rights of visitation shall be his sole responsibility, and shall not constitute an offset against the husband's alimony and/or child support obligation.
3.7 In the event that the wife intends to move her permanent place of residence, or in the event that the Wife intends to temporarily remove the child for more than 30 consecutive days or a total of sixty days in any calendar year to a location more than fifty (50) miles from Stamford, Connecticut, she must provide not less than ninety (90) days written notice to the Husband, at his last known address. If the Wife provides such notice, it constituting a violation hereof to not provide such notice, the laws of the State of Connecticut, as they then exist shall govern any proceeding brought by either party. In the event that the Wife fails to provide such notice the Wife shall have the burden of proving that the relocation or removal is in the best interest of the child.
3.8 The minor child shall use the name of Joshua Leader Dampf for all purposes until further order of the Court.
 ARTICLE IV CHILD SUPPORT AND FINANCIAL DECISIONS IN JOINT CUSTODY
4.1 The parties agree, that based upon the financial affidavits of the parties attached hereto and made a part hereof, that the Husband's child CT Page 1830-ds support payment is $268.00 per week as calculated pursuant to the guideline support mandated by the State of Connecticut and that the Husband shall pay said $268.00 per week in advance to the Wife retroactive to November 4, 2000.
4.2 Nothing heretofore set forth shall bar either party from contributing more to the support of the children or providing the child with additional monies, property or services. However, neither party shall advise the child of such an arrangement or any financial arrangement concerning support.
4.3 Each party acknowledges and recognizes that sums paid toward the support of the minor child are not deductible from gross income for purposes of determining Federal or State Income Taxes. However, a party may be able to claim Head of Household Status for purposes of Federal and State Income Taxation, and they have been advised to consult with an accountant on this issue.
4.4 Each party further acknowledges that the child's right to child support extends until his 18th birthday or, if he is enrolled in high school, until the child graduates or until his 19th birthday, whichever event first occurs.
 4.5 In the event that the minor child, Joshua attends private school in Connecticut during the period that the Husband is obligated to pay child support, the Husband shall contribute one-half of the tuition, books, and other necessary customaiy expenses, but, in no event shall the amount of his contribution exceed $5,000.00 per annum. In the event that the parties are unable to agree upon which school or whether private school is appropriate, they shall submit the dispute to the Family Relations Office in Stamford, Connecticut for binding mediation.
 ARTICLE V MEDICAL INSURANCE FOR THE MINOR CHILDREN. UNREIMBURSED MEDICAL EXPENSES, COBRA
5.1 Both parents agree to maintain medical insurance of equivalent coverage as is presently available through their employment or group medical insurance plan for the benefit and coverage of the minor child until such time as each child is no longer eligible for coverage. The Husband represents that he currently has medical insurance through his CT Page 1830-dt employer. The wife is presently unemployed and has no medical coverage in effect
5.2 In the event that both parties no longer have medical insurance available to either of them through employment, or the group plan referenced above, then the Husband and Wife shall maintain equivalent medical insurance for the minor child, on a 50/50% shared cost bases.
5.3 The Husband and Wife shall share the expense or costs of unreimbursed medical and dental expenses for the benefit of the minor child as long as the Husband is obligated to pay child support. For purposes of this paragraph the unreimbursed medical and dental expenses
shall be defined as "all reasonable medical, optical, surgical, psychiatric, psychological, reasonable nursing expenses and the cost of prescription drugs ("medical expenses") and all unreimbursed routine dental expenses including necessary, periodontic, endodontic and orthodontic expenses ("dental expenses") the shared expense or cost shall be 50/50% split.
5.5 Consent for any non-emergency "medical expenses" and "dental expenses" shall not be unreasonably withheld.
5.6 Each party shall have the benefit of § 46b-84(b-84(d) of the Conn. Gen. Stat. with respect to any insurance claims which might have to be submitted to either party's medical or dental insurance carrier on behalf of the minor children.
5.7 The parties agree that the provisions of 42 U.S.C. § 300bb, et seq., 29 U.S.C. § 1161, et seq., and particularly 29 U.S.C. § 1169
shall be applicable to the extent that any medical or health plan is a group health plan covered by the provisions of Title 29 § 1161, et seq., and that the court shall have continuing jurisdiction to enter a qualified Medical Child Support Order so as to insure the ability of either parent to process insurance claims through the other parent's qualified group Medical or Dental Insurance plans.
5.8 The wife is presently insured under the health insurance plan provided by the husband through his employer. The husband agrees to provide the wife written notice of her rights and obligations pursuant to COBRA and cooperate so that the wife may continue her coverage under the existing plan.
 ARTICLE VI
CT Page 1830-du
6.1 Each party shall irrevocably designate the other as insurance trustee for the benefit of the minor child on the life insurance proceeds as follows: both parties agree to maintain not less than $500,000.00 in life insurance coverage in full force and effect on their respective lives until the minor child attains 22 years of age.
6.2 The obligation to provide the life insurance coverage and the amount of life insurance coverage may be met by the use of a term insurance policy(ies) so long as the death benefit payable is the same as that currently provided under any existing policy(ies).
6.3 Nothing heretofore set forth shall bar either party from voluntarily providing life insurance in excess of that which is currently provided.
6.4 Each party shall be responsible for the cost of maintaining the life insurance coverage on their own lives as required by the prior sections of this Article.
6.5 If the cost of any life insurance obligation becomes prohibitive for either party, the parties shall meet to discuss a modification of this provision. If the parties cannot reach a voluntary agreement on modification they may seek mediation or by appropriate motion properly bought seed a judicial determination of the issue. For purposes of this provision, "prohibitive" shall mean a substantial increase in the cost of coverage so as to represent hardship or excessive financial burden on the party given their net income and their obligations under this agreement or any child support obligation then existing.
6.6 Each party shall provide the other party with proof of the existence of the required life insurance coverage on a yearly basis. Furthermore, each party agrees to supply the other party with such information as is necessary to carry out the provision of Article VI, including, when necessary, the exchange of financial data and information.
6.7 If either party shall fail to comply with the obligations contained in Article VI, then the obligations of such party shall survive their death, and the amount which would have been available as a death benefit, shall survive the party's death and shall be a charge upon their respective estate.
6.8 At the option of either party, if the payment of life insurance CT Page 1830-dv premiums becomes prohibitive as defined in § 6.6 above, and further, if there is no voluntary agreement, and a motion for modification of the obligation as provided for in § 6.6 is denied, then the other party, at their option, may pay the amount of the premium, and all sums so paid shall be a charge upon the estate of the defaulting party. Nothing contained herein in § 6.9 is intended to limit a party's right to seek a contempt citation, if appropriate.
 ARTICLE VII PROPERTY OF PARTIES
7.1 TANGIBLE PERSONAL PROPERTY: The parties have amicably divided their tangible personalty and each shall continue to own, free of any claim by the other, such personalty as is in their respective possession.
7.2 INTANGIBLE PERSONAL PROPERTY: LEFT INTENTIONALLY BLANK
 ARTICLE VIII MOTOR VEHICLES
8.1 The Wife is declared the owner of the 1997 Toyota 4Runner, she currently operates, and shall own said vehicle fee and clear of any claim of the Husband. The Wife shall be solely responsible for all costs attendant to ownership including the responsibility for the payment of personal property taxes, insurance, repairs, gas and oil, and any outstanding loans on said vehicle. During the period before transfer of ownership to the Wife, the Wife represents that she is not aware of any accident involving the ownership or operation of said vehicle for which a potential claim might be made against the Husband. If any claim is made the Wife agrees to promptly notify the insurance carrier providing coverage on the date of incident and also provide notice to the Husband. The Wife shall indemnify and hold the Husband harmless from any claims or liability with respect to the outstanding loan on said vehicle, and any claims arising from her use and operation of the vehicle. The Husband shall assign all right, title and interest he may have in said vehicle to the Wife upon the entry of the judgment dissolving the parties marriage. The Wife shall insure the vehicle and be solely responsible for all costs and expenses regarding same both prior to and after the Husband's interest in said vehicle is assigned or transferred to the Wife.
8.2 The Husband is declared the owner of the 1999 Acura automobile, he currently operates, and shall own said vehicle free and clear of any CT Page 1830-dw claim of the Wife. The Husband shall be solely responsible for all costs attendant to ownership including the responsibility for the payment of personal property taxes, insurance, repairs, gas and oil, and any payments on said vehicle. The Husband represents that he is not aware of any accident involving the ownership or operation of said vehicle for which a potential claim might be made against the Wife. If any claim is made the Husband agrees to promptly notify the insurance carrier providing coverage on the date of incident and also provide notice to the Wife.
8.3 Any motor vehicle personal property tax in arrears, shall be paid by the party to whom the vehicle is assigned under § 8.1 and § 8.2 above. The party paying such taxes in tax years subsequent to 1999 shall have the right to claim such tax as an itemized deduction on Federal Income Tax Returns — if appropriate.
 ARTICLE IX INTENTIONALLY EXCLUDED ARTICLE X TAXES
10.1 For all tax years subsequent to 2000 the parties shall file separate tax returns.
10.2 For all tax returns for tax years prior to 2000 (wherein the parties filed a joint return) the parties represent one to the other that they each individually reviewed said tax returns (both State and Federal) and jointly assisted in the compilation and preparation of the return or in the information that was used by a tax preparer or accountant to prepare the return, and that they freely, knowingly and voluntarily signed said returns. Each party represents one to the other that neither would be an innocent spouse as defined under the provisions of the Internal Revenue Code (IRC § 6013(e)) and that each party is jointly liable for any additional tax liabilities, penalties and interest assessed by any taxing authority with respect to any joint income tax return filed by the parties for any tax year prior to 2000.
10.3 Each party agrees to pay all taxes, interest, or penalties, and to indemnify and hold the other harmless with respect to any and all proceedings to collect additional taxes, interest, penalties including but not limited to any claims, assessments, notice (s) of deficiency, demands, enforcement action, or suits with respect to Federal, State or CT Page 1830-dx Municipal income taxes, for any year in which the parties filed a joint income tax return, to the extent that any such claim, assessment, notice of deficiency, demand, enforcement action, suit, payment, interest, penalty or additional tax liability is imposed by reason of that party's income or the disallowance of a deduction (specifically attributable to that party), on any joint income tax return. As to deductions on any joint federal, state or municipal, income tax return, not specifically attributable to one party — each party shall be equally liable for any deficiency arising therefrom.
10.4 If either party receives notice of any audit or tax proceeding involving any such joint return, he or she shall immediately notify the other party of such proceeding. All such notices shall be sent by certified mail with a return receipt requested. To the extent practicable, the parties shall cooperate with one another in connection with the defense of any audit or tax proceeding and shall exchange such information as is necessary to defend such audit or tax proceeding.
10.5 Each party is free to obtain independent counsel of their choice with respect to any tax proceeding, including but not limited to, audits, deficiencies. etc. at their own cost. As previously noted, to the extent practicable, the parties shall cooperate in the defense of any audit or tax proceeding. Each party shall be responsible for their own attorney's fees or accountant's fees, and any expenses and costs incurred in the defense of any tax audit or tax proceeding.
10.6 The parties agree that this Agreement has been negotiated and entered into with the understanding that the tax treatment to be accorded the terms of this Agreement is as follows:
All property transfers pursuant to the terms of this Agreement are made pursuant to § 1041 of the Internal Revenue Code, it being understood that such transfer is being made without any capital gain to the transferor, and the transferee of any such property shall take the transferor's basis. The transferor shall supply forthwith to the transferee all records, documents, and any information pertaining to the adjusted cost basis and holding period of all such property. Both parties agree to supply any and all documents and authorizations necessary in order to verify the basis of the property.
10.7 The undersigned hereby elect to have the provisions of § 1041 of the Internal Revenue Code apply to all qualifying transfers of property after July 18, 1984 under any instrument in effect on or before July 18, 1984. The undersigned understand that 1041 applies to all property transferred between spouses, or former spouses incident to CT Page 1830-dy divorce. The parties further understand that the effects for Federal income tax purposes of having § 1041 apply are that (1) no gain or loss is recognized by the transferor spouse or former spouse as a result of this transfer; and (2) the basis of the transferred property in the hands of the transferee is the adjusted basis of the property in the hands of the transferor immediately before the transfer, whether or not the adjusted basis of the transferred property is less than, equal to, or greater than its fair market value at the time of the transfer. The undersigned understand that if the transferee spouse or former spouse disposes of the property in a transaction in which gain is recognized, the amount of gain which is taxable may be larger than it would have been if this election had not been made.
10.8 The Wife shall be entitled to declare the minor child as dependent on her federal, state, or local tax returns for all odd years after the tax year 2000. The Husband shall be entitled to declare the minor child as dependent on his federal, state or local tax returns for all even years after the tax year 2001. Each party agrees to execute Form 8332 or such other forms as may be necessary to claim the exemption(s) in accordance with this agreement.
Pursuant to the provisions of the Taxpayer Relief Act of 1997, "for purposes of Federal Income Taxes," tax credits are available for each qualifying child under the age of 17, who is claimed as a dependency exemption, and who is the son, daughter, stepchild or eligible foster child of the taxpayer. The child tax credit begins with the 2001 tax year.
The parties agree, that based upon the provisions of Article XI, § 14.9, the party who claims a child as a dependent shall be the party entitled to use any child tax credit based upon said fact, so long as it is permitted by law, and the facts allow them to qualify for use of the tax credit.
Nothing herein, is an express representation that use of the child tax credit is desirable or applicable under the particular facts applicable to each party in post divorce, tax years.
In addition, the parties are further advised, that the "1997 Taxpayer Relief Act" also established various educational tax credits.
As to all tax matters, each party is advised to consult their own accountant for information on and guidance concerning when these educational tax credits can or should be used. The Wife shall file the CT Page 1830-dz minor child's tax return.
10.9 As to the tax returns to be filed for the year 2000, the parties shall have the option to file joint returns, if their accountant, William Pate, so recommends. In the event the parties file joint 2000 tax returns, their accountant, William Pate, shall allocate the tax liability between the parties, so as to fairly distribute the tax burden to each of the parties based upon their respective income, and/or deductions. In the event that the allocation requires payments from either or both of the parties, William Pate shall determine the amounts of payment due from each of the parties, and to whom or where such payment is to be made. Similarly, in the event of a refund, William Pate shall allocate the refund between the parties. In the event either of the parties refuses to accept the calculations and recommendations of William Pate, the parties shall file individual returns. The parties shall provide all necessary tax documents to William Pate within five (5) days of receipt; and, both parties shall advise William Pate of their respective decision to file a joint or individual return within two (2) days of receipt of William Pate's recommendation, as hereinbefore provided.
 ARTICLE XI MUTUAL RELEASES
11.1 Subject to the Court's final determination as to the alimony and property division, the Husband and Wife, both on behalf of himself or herself, respectively, and for his or her respective heirs, executors, administrators, assigns and/or legal and/or personal representatives, have, absolutely and forever, remised, released and discharged, and do hereby, by these presents, absolutely and forever, remise, release and discharge, the other of and from all cause or causes of action, claims, rights and/or demands, whatsoever, in law and/or in equity, which he or she respectively ever had, may have had, not have, may not have, shall hereafter have and/or may hereafter have against the other, including but not limited to any claims or causes of action based in tort (including but not limited to any claims under 42 U.S.C. § 13981, et seq., assault, negligence, etc.), violations of civil rights, or for violation of any local, state, or federal law or regulation; any breach of contracts or quasi contracts; or any cause of action or claim in law or equity any or all cause or causes of action arising from a claim based upon a breach of the provisions of this agreement.
11.2 Except as expressly provided to the contrary in this Agreement, and subject to the Court's final determination as to alimony and property CT Page 1830-ea division, the Husband and Wife may, in any way he or she sees fit, dispose of his or her property of whatsoever nature, real, personal and/or mixed. The Husband and Wife, each on behalf of himself or herself, respectively, and for his or her respective heirs, executors, administrators, assigns and/or legal and/or personal representatives, hereby waive, renounce, release and remise any and all interest, rights and/or claims which he or she, respectively, ever had, may have had, now have, may now have, shall hereafter have and/or may hereafter have against and/or regarding the other and/or property and/or the estate of the other, including, but not limited to, the right to elect to take against any Last Will and Testament of the other (whether said Will be heretofore and/or hereafter executed and whether said Will may now and/or hereafter be provided for in and/or by any law of the State of Connecticut, any other state or territory of the United States, and/or any foreign country) the right of dower, the right to take by intestate distribution and/or any other past, present and/or future, actual and/or possible rights against the other, and/or property and/or estate of the other. Said terms "property" and "estate" shall include property and estate of whatsoever nature, real, personal and/or mixed, under and/or by virtue of the laws of any state and/or country, whether now and/or hereafter acquired. The Husband and Wife shall both, at the request of the other, and/or the other's heirs, executors, administrators assigns, and/or legal and/or personal representatives, execute, acknowledge and deliver any and all deeds, releases and/or any other instruments necessary to bar, release and/or extinguish such interest, rights and/or claims, and/or which may be needful for the proper carrying into effect of any of the provisions of this Agreement. The Husband and Wife hereby renounce and relinquish any and all interest, rights and/or claims that he or she, respectively, ever had, may have had, now have, may now have, shall hereafter have and/or may hereafter have to act as executor and/or administrator of the other party's estate, unless the other party shall hereafter name him or her as executor or executrix.
11.3 The parties acknowledge and agree, that any Will which names the other party as a beneficiary of any property or estate of the party which Will was executed prior to the date of the execution, by both parties of, of this agreement is hereby revoked and declared null and void and of no effect, and they waive any interest in the estate or property of the other party.
11.4 Each party shall cancel any insurance policy which they hold on the life of the other and of which they are the owner except if the amount of insurance coverage under said policy is equal to or substantially the same as the amount of any outstanding debt, CT Page 1830-eb obligation, note, mortgage, etc. for which said other party, upon whose life the policy of insurance was issued, is obligated to indemnify and hold the other party harmless therefrom, e.g., mortgage insurance life insurance policy equal to outstanding debt, etc. This provision does not apply to any policy which must be maintained for the benefit of the minor children.
11.5 The parties acknowledge that pursuant to § 45a-257 C.G.S. the dissolution of the parties' marriage acts as a revocation of any Will executed prior to the date of judgment unless there is a provision in the Will regarding such event. The parties are advised to consult their Wills and determine whether or not they need to be revoked, cancelled or modified.
 ARTICLE XII LIABILITIES
12.1 The Husband shall be solely responsible for those liabilities set forth on his financial affidavit.
12.2 The Wife shall be solely responsible for the payment of those liabilities set forth on her financial affidavit.
12.3 The Wife covenants and represents that she has not heretofore incurred or contracted, nor will she at any time in the future incur or contract, any debt, charge or liability whatsoever for which the Husband, his legal representatives or property or estate is now or may become liable and the Wife further covenants at all times to keep the Husband free and harmless and indemnified of and from any and all debts, charges and liabilities heretofore or hereafter contracted by her.
12.4 The Husband covenants and represents that he has not heretofore incurred or contracted, nor will he at any time in the future incur or contract, any debt, charge or liability whatsoever for which the Wife, her legal representatives or property or estate is now or may become liable and the Husband further covenants at all times to keep the Wife free and harmless and indemnified of and from any and all debts, charges and liabilities heretofore or hereafter contracted by his.
 ARTICLE XIII LEFT INTENTIONALLY BLANK ARTICLE XIV
CT Page 1830-ec LEGAL COUNSEL
14.1 The parties hereto declare and acknowledge that each has had independent legal advise of his or her own selection. The Husband has been represented by John V.A. Murray, Esq., One Atlantic Street, Stamford, Connecticut 06901 and, the Wife has been represented by Mark F. Katz, Esq., 196 North Street, Stamford, Connecticut.
14.2 In the event that it shall be determined by a Court of competent jurisdiction that either party shall have breached any of the provisions of this Agreement or of any Court decree incorporating by reference or otherwise this Agreement or portions thereof, the offending party shall pay to the other party reasonable attorney's fees, Court costs and other expenses incurred in the enforcement of the provisions hereof. If a Court of competent jurisdiction rules that a party against whom proceedings for an alleged breach have been brought has not committed said breach, is not responsible therefor, is excused from performance, or that the moving party failed to prove their case, then said party shall be awarded reasonable attorney's fees and costs as provided in Section 46b-87, as amended.
14.3 Each of the parties shall be responsible for their respective counsel fees incurred in the negotiation and preparation of this Agreement in the pending Dissolution action between the parties.
 ARTICLE XV DECREE AND BINDING EFFECT
15.1 The provisions of this Agreement shall not be construed to prevent either party from obtaining a Decree of the dissolution of their marriage, and either party shall have the right to submit this Agreement to any Court having jurisdiction of any action for approval and for incorporation of the substantive provisions herein in any Decree of Dissolution entered by such Court. The parties agree, however, that in any such action, neither will ask for any different or greater rights or relief than specified herein, and that they will abide with and be bound by the provisions of this Agreement, whether or not incorporated in any such decree.
15.2 The parties agree that, notwithstanding any incorporation of this agreement or its substantive terms in any decree of dissolution, this agreement shall not merge therein and shall in all respects survive the CT Page 1830-ed same, but this provision shall not prevent any modification of the terms of this agreement or any decree rendered thereon as to the support provisions as hereinbefore set forth, provided there has been a modification entered by the Superior Court in and for the State of Connecticut or any other court of competent jurisdiction.
 ARTICLE XVI REPRESENTATIONS
16.1 The Husband represents to the Wife that a true and accurate statement under oath of his income, assets, and liabilities is set forth in the Husband's Affidavit dated January 18, 2001 attached hereto and made a part hereof, a signed copy of which has been delivered to the Wife and the original of which will be filed in the Court in the Dissolution action instituted by the Husband against the Wife. The Husband represents that he has no other assets or income except those set forth in said Affidavit.
16.2 The Wife represents to the Husband that a true and accurate statement under oath of her income, assets, and liabilities is set forth in the Wife's affidavit dated January 18, 2001, attached hereto and made a part hereof, a signed copy of which has been delivered to the Husband and the original of which will be filed in the Court in the Dissolution action instituted by the Wife against the Husband. The Wife represents that he has no other assets or income except those set forth in said Affidavit.
 ARTICLE XVII NO REPRESENTATIONS
17.1 Each party hereto agrees that no representations of any kind whatsoever have been made to him or her as an inducement to enter into this Agreement other than the representations set forth herein, and that this Agreement contains all of the terms of the contract between the parties hereto, and that there are no secret or unwritten agreements.
 ARTICLE XVIII AFTER-DOCUMENTS
18.1 At the request of the other party, each of the parties hereby agrees to sign and deliver free of cost and expense, any documents which may be necessary or desirable to effectuate or implement any of the provisions of this Agreement. CT Page 1830-ee
 ARTICLE XIX MODIFICATION WAIVER
19.1 A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature. If a Court of competent jurisdiction shall modify any provision of this Agreement dealing with custody or child support, then this Agreement shall be considered as modified to be in accord with said modification. However, nothing in this Agreement shall permit the modification of any provision providing for a property distribution or settlement under § 46b-81 of the Connecticut General Statutes or of any of the other provisions of this agreement.
 ARTICLE XX MISCELLANEOUS PROVISIONS
20.1 It is understood and agreed that the provisions of each Article in this Agreement are independent covenants and agreements and should any part or provision of this Agreement be breached or waived by any party or held to be invalid, the remainder of this Agreement shall nevertheless be deemed valid and binding upon the parties hereto.
 ARTICLE XXI ENTIRE AGREEMENT
21.1 Both the legal and practical effect of this Agreement in each and every respect and the financial status of the parties have been fully explained to both parties by their prospective counsel, and they both acknowledge that it is a fair Agreement and is not the result of any fraud, duress or undue influence exercised by either party upon the other or by any other person or persons upon either, and they further agree that this Agreement contains the entire understanding of the parties.
 ARTICLE XXII CHANGES IN AGREEMENT
22.1 No change shall be made in the foregoing covenant and agreements CT Page 1830-ef except by an instrument in writing duly executed by the parties.
 ARTICLE XXIII ORIGINAL COPY
23.1 This Agreement may be executed in any number of counterparts, any one of which executed by both parties, shall be deemed to be the original, although the other are not produced.
 ARTICLE XXIV LAW APPLICATION
24.1 All questions as to the validity, construction or effect of any provision of this Agreement, or of this Agreement as a whole shall be determined with reference to and in accordance with the laws of the State of Connecticut.
24.2 In addition, Connecticut, as the Home State of the minor child, shall exercise exclusive continuing modification jurisdiction under28 U.S.C. § 1738A(d) to decide issues of custody as it is the initial State entering a custody order consistent with the PKPA (Parental Kidnaping Protection Act) and so long as the children or either parent continue to reside in this State, and so long as the exercise of such jurisdiction is not specifically barred by said statute or any amendment (s) thereto.
 ARTICLE XXV HEADINGS
25.1 The paragraph headings herein are for convenience only and shall not be construed to limit or affect any provisions of this Agreement.
 ARTICLE XXVI ESTATE OBLIGATION OF HUSBAND OR WIFE
26.1 Except as is specifically provided herein, the obligations under this Agreement shall not survive the death of the Husband. If, however, the Husband fails to perform any of the obligations provided in this Agreement during his natural life, the Estate of the Husband shall be obligated and responsible for such liability as may be incurred by reason CT Page 1830-eg of the Husband's default and the same shall be a charge upon the Estate of the Husband.
26.2 Except as is specifically provided herein, the obligations under this Agreement shall not survive the death of the Wife. If, however, the Wife fails to perform any of the obligations provided in this Agreement during her natural life, the Estate of the Wife shall be obligated and responsible for such liability as may be incurred by reason of the Wife's default and the same shall be a charge upon the Estate of the Wife.
 ARTICLE XXVII FULL DISCLOSURE
27.1 Each party has had an opportunity and/or has consulted with his or her attorney regarding the issues arising from the dissolution of the marriage and this Agreement has not been the result of any frauds (known at this time), duress or undue influences exercised by either party upon the other or by any other person or persons upon the other. Both parties acknowledge that this agreement has been achieved after full disclosure, of their rights including the right to engage in discovery of the assets, income and liabilities of the other party and is aware and knowledgeable of what has or has not been done with respect thereto. Each party acknowledges that they have had competent legal representation and honest negotiations.
IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands and seals the day and year indicated below:
Signed and sealed on this the 18th day of JANUARY, 2001. presence of:
____________________ __________________________ Witness FRANCIE LEADER, Wife ____________________ Witness
STATE OF CONNECTICUT )) ss. STAMFORD COUNTY OF FAIRFIELD )
Personally appeared before me this the 18th day of JANUARY, 2001, Francie Leader, who is known to the undersigned officer, who upon due oath did acknowledge that he signed the foregoing Agreement as his Free CT Page 1830-eh act and Deed.
_____________________________________ Mark F. Katz Commissioner of the Superior Court/or Notary Public My commission expires: ______________
Signed and sealed on this the 18th day of JANUARY, 2001. presence of:
____________________ __________________________ Witness RICHARD DAMPF, Husband ____________________ Witness
STATE OF CONNECTICUT )) ss. STAMFORD COUNTY OF FAIRFIELD )
Personally appeared before me this the 18th day of JANUARY, 2001, Richard Dampf, who is known to the undersigned officer, who upon due oath did acknowledge that he signed the foregoing Agreement as his Free act and Deed.
 _____________________________________ Mark F. Katz Commissioner of the Superior Court/or Notary Public My commission expires: ______________